IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2003

## CARL E. SAINE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-25706      W. Fred Axley, Judge**

_____

**No. W2002-03006-CCA-R3-PC  - Filed December 15, 2003**

_____

On September 1, 1977, the petitioner, Carl E. Saine, was convicted by a jury in the Shelby County Criminal Court of one count of rape and one count of assault with the intent to commit murder in the first degree.  He was sentenced to ninety-five years imprisonment for his rape conviction and to not less than six years nor more than twenty-one years imprisonment for his assault conviction. Subsequently, the petitioner filed to compel testing of evidence under the Post-Conviction DNA Analysis Act of 2001.  The post-conviction court denied the petition and the petitioner timely appealed.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

John H. Parker, II, Memphis, Tennessee, for the appellant, Carl E. Saine.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; William E. Gibbons, District Attorney General; and John Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On direct appeal, this court summarized the facts underlying the petitioner's convictions as follows:

> In the early afternoon of 2 December 1976, the [petitioner] entered the offices where the victim was employed as a secretary, finding the victim alone.  After a preliminary conversation, he

produced a wooden stick that he had on his person. He demanded money from the victim and when she denied having any, he struck her on the head with the stick. She attempted to escape and the [petitioner] continued to hit her on the head.

He pushed her into her employer's office and ordered her to remove her clothing. She resisted and refused to disrobe, and he continued to hit her on the head with the stick until she lost consciousness. When she regained consciousness, she was lying nude on the floor and the [petitioner] was on top of her, slapping her. His penis was inside her vagina and he was telling her "to move." She continued to fight him and he commenced hitting her on the head with her shoe. He then pulled her to her feet by her hair. When she begged him not to hurt her, he said that he was going to kill her to prevent her from "telling anything." He then choked her with his hands until she again lost consciousness.

When she recovered, he hit her with a "name-tag" that was on her employer's desk and she continued to resist. He wrapped a cord from a calculator machine around her neck, tightening it and telling her he was going to kill her. She lost consciousness a third time. When she recovered, the police were there. The cord was still around her neck and a writing pen was almost completely inserted in her neck. She was unconscious when stabbed in the neck with the writing pen.

She was taken to the hospital where she complained to the personnel there that she had been sexually assaulted. Her doctor observed numerous scalp lacerations, a puncture wound in the neck, and an eye hemorrhage. There were abrasions, bruises, inflamation and swelling at the entrance to the vagina and along the vaginal wall, i.e., the mouth of the womb.

There were traces of spermatoz[oa] on the victim's panties. Her panties and other items of clothing were torn and stained with blood. The offices where the crime occurred were in disarray and soiled by blood.

The [petitioner] was told of his Miranda rights after his arrest. He admitted fighting with the victim, but his version was that the victim made sexual advances toward him and he fought her in defense of himself.

<u>Carl Edward Saine v. State</u>, No. 120, slip op. at 1-3 (Tenn. Crim. App. at Jackson, May 18, 1978). This court affirmed the petitioner's convictions. <u>Id.</u>

On September 18, 2001, the petitioner, acting pro se, filed to compel testing of evidence being held by the State under the Post-Conviction DNA Analysis Act of 2001.[1] The post-conviction court appointed counsel to represent the petitioner, and counsel filed an amended petition. On November 12, 2002, the post-conviction court held an evidentiary hearing on the petition.

At the hearing, the petitioner and the State agreed "for the purposes of this hearing today and today only, . . . to stipulate that in sections 404 and 405 parts 2, 3, and 4 are all met."[2] Therefore, in order to qualify under the Act, the petitioner needed only to establish at the hearing that "[a] reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis," or "[a] reasonable probability exists that analysis of the evidence will produce DNA results which would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction."[3] Tenn. Code Ann. § 40-30-404(1) and -405(1) (Supp. 2001).

The petitioner explained that he was not challenging his conviction for assault. However, the petitioner argued that DNA testing of the spermatozoa discovered on the victim's torn panties would have revealed his innocence of the crime of rape. Counsel for the petitioner argued that "[t]here was a specimen left behind on the scene, but it was not tested and compared with [the petitioner] to prove whether or not it was [the petitioner's.] It was alleged to in the trial. It was used as evidence to convict him that there was a specimen found on the scene." The State countered, arguing that the petitioner's theory "that someone came in behind him and this woman is laying on the ground beat almost to death, comes in and has sex with her is just ludicrous."

In the order denying the petitioner's motion, the trial court noted that "[b]ased on the proof adduced at trial, this Court finds that the petitioner has not satisfied subsection (1) of the [applicable] statute." The petitioner timely appealed this ruling, raising the following issues for our review: (1) whether the post-conviction court erred in denying his petition, and (2) "[w]hether this court may wait until a decision is issued by the Tennessee Supreme Court in the case of <u>House v. Bell</u>."

## II. Analysis

### A. Post-Conviction DNA Analysis

---

[1] <u>See</u> Tenn. Code Ann. § 40-30-401 *et seq.* (Supp. 2001). The Post-Conviction DNA Analysis Act of 2001 has recently been recodified at Tennessee Code Annotated sections 40-30-301 *et seq.* (2003).

[2] <u>See</u> Tenn. Code Ann. § 40-30-404 and -405 (Supp. 2001); Tenn. Code Ann. § 40-30-304 and -305 (2003).

[3] On appeal, the petitioner bases his argument only upon Tennessee Code Annotated section 40-30-404 (Supp. 2001). Accordingly, it appears that the petitioner has abandoned any claim of error by the post-conviction court's denial of his petition under Tennessee Code Annotated section 40-30-405 (Supp. 2001).

As we noted initially, the petitioner only contests his conviction for rape. The Post-Conviction DNA Analysis Act of 2001 provides that

> a person convicted of and sentenced for the commission of . . . rape
> . . . may at any time, file a petition requesting the forensic DNA
> analysis of any evidence that is in the possession or control of the
> prosecution, law enforcement, laboratory, or court, and that is related
> to the investigation or prosecution that resulted in the judgment of
> conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-403 (Supp. 2001). There is no statute of limitation applicable to the Post-Conviction DNA Analysis Act of 2001. Id.

Prior to ordering DNA analysis of biological evidence, the post-conviction court must find the presence of all of the following criteria:

> (1) A reasonable probability exists that the petitioner would not have
> been prosecuted or convicted if exculpatory results had been obtained
> through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that
> DNA analysis may be conducted;
>
> (3) The evidence was never previously subjected to DNA analysis or
> was not subjected to the analysis that is now requested which could
> resolve an issue not resolved by previous analysis; and
>
> (4) The application for analysis is made for the purpose of
> demonstrating innocence and not to unreasonably delay the execution
> of sentence or administration of justice.

Tenn. Code Ann. § 40-30-404 (Supp. 2001). The petitioner's conviction for rape is "among those crimes for which an analysis is required when the statutory prerequisites are met." Willie Tom Ensley v. State, No. M2002-01609-CCA-R3-PC, 2003 WL 1868647, at *2 (Tenn. Crim. App. at Nashville, Apr. 11, 2003). This court has recently noted, "If the state contests the presence of any qualifying criteria and it is apparent that each prerequisite cannot be established, the trial court has the authority to dismiss the petition." William D. Buford v. State, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *6 (Tenn. Crim. App. at Nashville, Apr. 24, 2003), perm. to appeal denied, (Tenn. 2003). In sum, "[t]he failure to meet any of the qualifying criteria is, of course, fatal to the action." Id.

Moreover, this court has explained:

> Our relatively new act provides an additional method of relief to those who assert that they have been wrongfully convicted of a crime. Trial courts, practically speaking, must be afforded considerable discretion. Consequently, the scope of appellate review is limited. In our view, the terms of the act require that trial courts consider all the evidence available, including the evidence at trial and/or any stipulations of fact by the petitioner or his counsel and the state. In addition, the opinions of this court on either the direct appeal of the conviction or the appeals in any previous post-conviction or habeas corpus actions may provide some assistance.

Ensley, No. M2002-01609-CCA-R3-PC, 2003 WL 1868647, at *3.

The State and the petitioner stipulated that subsections (2), (3), and (4) of Tennessee Code Annotated section 40-30-404 were established. Accordingly, the petitioner needed only to prove that "[a] reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis."

At the post-conviction hearing, the petitioner admitted that he confessed to the assault of the victim. However, the petitioner argued that he left the victim while she was unconscious and that someone else could have then entered the room and engaged in sexual intercourse with the victim without her knowledge or consent, thus leaving biological evidence on the victim's panties. The post-conviction court determined that the petitioner's theory of the case was "unreasonable," finding that the petitioner would have been prosecuted and convicted despite any favorable DNA evidence. We agree.

At trial, the victim testified that during her struggle with the petitioner she momentarily lost consciousness. When the victim regained consciousness, she was nude and the petitioner was "laying flat on top of" her, slapping her. The victim stated that the petitioner was "having [a] relationship with me," explaining that he was having intercourse with her. The petitioner instructed her to move in a sexual fashion and began hitting her with a shoe when she would not comply. When the victim was taken for medical treatment, she informed medical personnel that she had been sexually assaulted. The victim's pelvic examination revealed abrasions to the entrance to the vagina, along the vaginal wall, and the cervix. The pelvic examination also revealed evidence of bruising, inflammation, swelling, and irritation. The examination indicated that the victim had been subjected to "forceful penetration."

Proof at trial was uncontroverted that the victim was discovered wearing only a leather coat and a torn bra. Her ripped panties were discovered under a chair in the office where the events occurred. On cross-examination by the defense, Elizabeth Ann Fowler, a forensic serologist, testified that the victim's panties were "weakly positive" for acid phosphotase, a chemical which is

present in seminal fluid. Additionally, Fowler stated that spermatozoa were present on the victim's panties. However, there was no evidence at trial that the victim wore the panties at any time during or after the rape. In fact, the victim remembered being nude during the attack and recalled putting on only her leather coat after the offense.

Upon our review of the record, we conclude that the record clearly reflects that evidence of seminal fluid on the victim's panties was not a major factor in proving the petitioner's guilt. Therefore, the petitioner failed to establish that a "reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis." Tenn. Code Ann. § 40-30-404(1) (Supp. 2001); see also Buford, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *6. Accordingly, we conclude that the post-conviction court did not err by denying the petition for DNA analysis.

### B. House v. Bell

The petitioner also argues that this court "may wait until a decision is issued by the Tennessee Supreme Court in the case of House v. Bell" to issue an opinion in the instant case. Recently, in House v. Bell, 311 F.3d 767, 777 (6th Cir. 2002), the Sixth Circuit Court of Appeals certified three questions of law for examination by the Tennessee Supreme Court. On November 24, 2003, our supreme court issued a per curiam order "respectfully declin[ing] to answer the certified questions." Thus, this issue is moot.

### III. Conclusion

We affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-6-